## STATE OF CONNECTICUT *v.* TERRELL WILLIAMS POND
### (AC 32468)

Beach, Alvord and Borden, Js.

Argued March 20—officially released September 25, 2012

*Kate MacLeman,* certified legal intern, with whom were *Timothy H. Everett,* special public defender, *Sabrina Copp* and *Andrew Veale,* certified legal interns, and, on the brief, *Matthew Bristol, Irene Kim* and *Louisa Lindberg,* certified legal interns, for the appellant (defendant).

*Leonard C. Boyle,* deputy chief state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *John Lion,* senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The crime of robbery in the second degree in violation of General Statutes § 53a-135 (a)

(2)[1] provides that a person is guilty of that crime when he commits robbery[2] and "in the course of the commission of the crime . . . he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument." The inchoate crime of conspiracy in violation of General Statutes § 53a-48 (a)[3] provides that "[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any of them commits an overt act in pursuance of such conspiracy."[4] The two related issues in this appeal present the question of whether, in order to convict a defendant of conspiracy to commit robbery in the second degree in violation of §§ 53a-48 (a) and 53a-135 (a) (2), the state must prove that the defendant conspirator had the specific intent that there would be a display or threat of the use of what was represented to be a deadly weapon or dangerous instrument, even if that specific intent is not required for proof of the underlying crime of robbery in the second degree. We conclude that our

---

[1] General Statutes § 53a-135 (a) provides in relevant part: "A person is guilty of robbery in the second degree when he commits robbery . . . [and] (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument."

[2] Robbery is defined by General Statutes § 53a-133 as, in general terms, committing a larceny, defined by General Statutes § 53a-119, by the use or immediate threat of physical force for the purpose of compelling the giving up of property. Neither the definition nor the application of those particular statutes is pertinent to this appeal.

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] This appeal does not involve any question about the "overt act" element of the crime of conspiracy.

Supreme Court authority requires the state to prove such specific intent.

On appeal, the defendant, Terrell Williams Pond, claims that (1) there was insufficient evidence of his specific intent that, in the course of the robbery, another participant in the robbery would display or threaten the use of what that participant represented to be a deadly weapon or dangerous instrument and (2) the trial court improperly failed to instruct the jury that the state had to prove that the defendant had such specific intent. We agree with the defendant's second claim and, accordingly, reverse the judgment of conviction.

The jury reasonably could have found the following facts. On October 27, 2008, Stanislaw Grzadko, the victim, returned home from work at approximately 5:45 p.m. Grzadko's home is located on Church Street in Hamden. Upon returning home, he ate dinner and then went for his evening walk. At approximately 6:45 p.m., while he was walking on the Dixwell Avenue sidewalk, he was approached from behind by the defendant and Montel Harris, both of whom were riding bicycles on the sidewalk. Harris approached the victim on his left, the defendant approached on his right, each wearing a dark hooded sweatshirt and dark pants. Harris asked the victim where he was going and then demanded that he stop, repeating the order "two [or] three times . . . ." When the victim continued to walk, the defendant pushed his bicycle in front of the victim, forcing him to stop. With the victim now unable to move forward, Harris raised his jacket and lifted the handle of what appeared to be a gun, later determined to be a $CO_2$ pistol, from his waistband, asking the victim, "do you know what it is?" When the victim responded, "yes, yes, I know," and as the defendant continued to block the victim from moving, Harris ordered the victim to remove everything from his pockets. Rather than turn his belongings over to the two young men, the victim

turned to the side and ran into traffic on Dixwell Avenue in order to escape. The defendant and Harris rode off on their bicycles. Shortly thereafter, the victim called the Hamden police and reported the incident. Later that evening, the Hamden police detained the defendant and Harris, and the victim later identified them as the two young men who had accosted him.

The defendant was charged with attempt to commit robbery in the second degree in violation of General Statutes §§ 53a-49 and 53a-135 (a) (2), and conspiracy to commit robbery in the second degree in violation of §§ 53a-48 and 53a-135 (a) (2). Following a jury trial, the defendant was convicted of the conspiracy count and acquitted of the attempt count. The court sentenced the defendant to five years incarceration, suspended after fifteen months, and three years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to support the jury's verdict on the conspiracy charge. Specifically, he claims that the charge of conspiracy to commit robbery in the second degree required the state to prove that (1) he and Harris specifically "had an agreement to display a deadly weapon or dangerous instrument" and (2) he had the specific intent that such a weapon or instrument would be displayed by Harris. The defendant argues further that the evidence was insufficient to prove that he and Harris had such a specific agreement and that he had such a specific intent.

The state responds that, as a legal matter, in order to prove a conspiracy to commit robbery in the second degree under § 53a-135 (a) (2), "the state is not required to offer independent proof that the defendant specifically intended that a dangerous instrument or deadly

weapon would be displayed." The state further contends, however, that as a factual matter, if there is such a requirement, it produced sufficient evidence thereof. While we disagree with the state's legal contention, we agree that, nevertheless, the state produced sufficient evidence for the jury reasonably to conclude that the defendant specifically intended that a dangerous instrument or deadly weapon would be displayed.

We begin with the pertinent language of the conspiracy statute. Section 53a-48 (a) provides in relevant part that a "person is guilty of conspiracy when, *with intent that conduct constituting a crime be performed*, he agrees with one or more persons to engage in or cause the performance of such conduct . . . ." (Emphasis added.) Although the language of the conspiracy statute does not, by its terms, establish whether the specific intent provided by the statute—the "intent that conduct constituting a crime be performed"—requires proof of a specific intent to perform all of the elements of the crime conspired, including any aggravating elements, our Supreme Court addressed this issue in *State* v. *Padua*, 273 Conn. 138, 869 A.2d 192 (2005).

In *Padua*, the defendants were convicted of conspiracy to sell marijuana within 1500 feet of a public housing project. Id., 145. The court stated that it was an essential element of the conspiracy charge that the conspirators agreed to sell marijuana specifically within 1500 feet of a public housing project. Id., 166. Our Supreme Court held, in accord with the state's concession, that the trial court's instruction, which had omitted this element, was improper but that the impropriety was harmless beyond a reasonable doubt. Id. In doing so, the court stated that "[p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Internal quotation marks omitted.) Id., 167. This means

that the specific intent required by the conspiracy statute requires specific intent to bring about *all* of the elements of the conspired offense, even those that do not by themselves carry a specific intent with them. We must reach this conclusion because, when *Padua* was decided, it was already settled law that in a prosecution for sale of drugs within 1000 feet of a school, the state was not required to prove that the defendant knew that his sale was within 1000 feet of a school. See *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995) ("[T]he plain language of [General Statutes] § 21a-278a (b) requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within 1000 feet of a school. The state is not, however, required to prove that the defendant knew that this location was within the zone.").

In the present case, we are bound by the holding in *Padua* to conclude that, in order to prove the defendant guilty of conspiracy to commit robbery in the second degree in violation of § 53a-135 (a) (2), the state needed to prove that he and his coconspirator specifically had an agreement to display a deadly weapon or dangerous instrument and that the defendant had the specific intent that such a weapon or instrument would be displayed. We agree with the state that there was sufficient evidence of both an agreement and the defendant's specific intent that such a weapon or instrument would be displayed.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established

guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 147, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101, after remand, 110 Conn. App. 171, 954 A.2d 256 (2008), appeal dismissed, 295 Conn. 192, 989 A.2d 1072 (2010). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 275 Conn. 534, 543, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537 (2006).

The law in this regard is well established. There need not be evidence of a formal agreement; it is sufficient to show that the alleged conspirators were knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Millan*, 290 Conn. 816, 825–26, 966 A.2d 699 (2009). The requisite agreement may be inferred from the separate acts of the individuals accused as coconspirators, the circumstances surrounding their commission and from the activities of the accused. Id., 826. Furthermore, a "coconspirator's conduct at the scene can provide the requisite evidence of an agreement." Id., 828.

In the present case, as the state points out, the jury reasonably could have found that the defendant and Harris intended to rob the victim by the display of what was represented to be a deadly weapon or dangerous instrument. As they approached the victim, neither struck nor touched him; thus, it was inferable that this was not intended to be simply "a strong-arm robbery." When the victim ignored Harris' demand to stop, neither the defendant nor Harris restrained him. Instead, it was only after the defendant had positioned himself to block the victim's path and both the defendant and Harris were less than an arm's length away from him that

Harris displayed the pistol in his waistband and demanded the victim's money. Therefore, there was ample evidence that they intended to stop the victim and display the gun in such a way that would threaten the victim into giving up his money without, at the same time, attracting the attention of anyone else who might be in the area. Furthermore, "[t]he fact that the defendant stood by silently when a gun was displayed in order to [force the victim to give up his property] . . . is evidence from which the jury might reasonably have inferred the defendant's acquiescence in [an] enlarged criminal enterprise." *State* v. *Crosswell*, 223 Conn. 243, 256, 612 A.2d 1174 (1992). Accordingly, we conclude that there is a reasonable view of the evidence that supports the jury's verdict of guilty.

## II

The defendant's second claim is that the trial court improperly "failed to instruct the jury that the agreement element of the conspiracy charge required that the state prove . . . the defendant had an agreement with . . . Harris to commit a robbery in which one of them would display" what was represented to be a deadly weapon or dangerous instrument. In this regard, the defendant seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[5] because, although he did not raise this claim at trial, the omitted part of the instruction involves an essential element of the crime, and, therefore, its omission from the jury instruction is a constitutional violation. We agree.

---

[5] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

The following additional facts are necessary for the resolution of this claim. At the close of evidence, the court offered both parties the opportunity to submit proposed jury instructions. The defendant's proposed instruction set forth the applicable language from §§ 53a-48 and 53a-135 (a) (2). The proposed instructions asked the court to instruct the jury that "the [s]tate must prove the following elements beyond a reasonable doubt: (1) that the [d]efendant and Montel Harris agreed to commit a robbery, (2) that the [d]efendant committed a robbery;[6] and (3) that in the course of the commission of the robbery or of immediate flight [therefrom] the [d]efendant or another participant in the crime displayed or threatened the use of what he represented by his words or conduct to be a deadly weapon or a dangerous instrument." The court received the defendant's proposed instructions, and they were discussed in a charging conference that was held off the record. The state did not submit a formal request to charge.

The trial court's instructions were to the effect that the specific intent required for the conspiracy charge was that as for a charge of larceny. After reading the conspiracy statute to the jury, giving general instructions on what was and was not required to prove an agreement and instructing on the necessity of an overt act, the court stated: "The third element is that the defendant had the intent to commit robbery in the second degree. The intent for that crime is that at the time of the agreement he intended to commit larceny. The defendant may not be found guilty unless the state has proved beyond a reasonable doubt that he specifically intended to commit a larceny when he entered into the agreement. In summary, the state must prove beyond a reasonable doubt that the defendant had an agreement with one or more other persons to commit robbery in

[6] This was obviously incorrect, as there is no requirement, in a conspiracy charge, that the defendant have committed the completed crime.

the second degree, at least one of the coconspirators did an overt act in furtherance of the conspiracy, and the defendant specifically intended to deprive the owner of his property."

We first consider the state's argument that the defendant induced the instructional error of which he now complains.[7] Specifically, the state points out that the defendant submitted a request to charge that had *no* specific intent requirement in it. Thus, the state contends that, because the trial court instructed on the specific intent requirement as it did—namely, the specific intent to commit a larceny—the defendant "received a jury instruction that imposed a higher burden on the state than the defendant himself proposed . . . ." We reject this contention and see no justification for the application of the induced error doctrine where the defendant has simply requested one erroneous instruction and received another. See *State* v. *Kitchens*, 299 Conn. 447, 469, 10 A.3d 942 (2011) ("[t]his court has found induced error undeserving of appellate review in the context of a jury instruction claim when the defense has affirmatively requested the challenged jury instruction . . . or has encouraged or prompted the court to refrain from giving an instruction that arguably should have been given" [citations omitted]).

In light of our discussion in part I of this opinion, it is clear to us that the court's instruction on the specific intent required for the charge of conspiracy to commit robbery in the second degree in violation of § 53a-135 (a) (2) was constitutionally defective and was likely to have misled the jury in arriving at its verdict. The court did not tell the jury that the state was required to prove that the defendant specifically intended that, in the

---

[7] The state does not appear to rely on the waiver doctrine of *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). The state acknowledges that the trial court neither held a charging conference on the record nor provided the defendant with a copy of its charge in advance.

course of the robbery, what was represented to be a deadly weapon or dangerous instrument would be used or displayed. Contrary to the state's argument, there is nothing in the rest of the language of the jury instructions that would render this omission in the instruction harmless.

The judgment is reversed and the case is remanded for a new trial.

In this opinion BEACH, J., concurred.

BORDEN, J., concurring. I agree with and join the well reasoned opinion of the majority. I write separately, however, to point out what I regard as an anomaly in our Supreme Court's interpretation of the conspiracy section of the Penal Code that our Supreme Court may wish to revisit.

I agree that we are constrained by the decision of our Supreme Court in *State* v. *Padua*, 273 Conn. 138, 869 A.2d 192 (2005), to conclude that the specific intent required by the conspiracy statute requires specific intent to bring about *all* of the elements of the conspired offense, even those elements that do not by themselves carry a specific intent with them. For me, however, that should not end the discussion. I am also constrained to discuss what may well be regarded as an anomaly in our Supreme Court's interpretation of the conspiracy section of the Penal Code. I begin with the case law that has produced that anomaly.

The competing legal contentions of the defendant, Terrell Williams Pond, and the state raise a fundamental question about the scienter requirement under General Statutes § 53a-48 (a), the conspiracy statute, as applied to General Statutes § 53a-135 (a) (2), robbery in the second degree by the display or threat of use of what is represented to be a deadly weapon or dangerous

instrument. That question is: must the state prove that the conspirators specifically agreed that such a weapon or instrument would be displayed or threatened to be used, as the defendant contends; or, as the state contends, is it sufficient for the state to prove that the conspirators agreed to commit a robbery and that, irrespective of any specific scienter requirement on the part of any one conspirator, one of the participants did display or threaten the use of such a weapon or instrument?

The pertinent language of the conspiracy statute, § 53a-48 (a), provides in relevant part that a "person is guilty of conspiracy when, *with intent that conduct constituting a crime be performed,* he agrees with one or more persons to engage in or cause the performance of such conduct . . . ." (Emphasis added.) The language of the conspiracy statute does not, by its terms, answer the question posed by this case, namely, whether the specific intent provided by the statute—the "intent that conduct constituting a crime be performed"—requires proof of a specific intent to perform all of the elements of the crime conspired, including any aggravating elements.

The Supreme Court first addressed this question in *State* v. *Beccia,* 199 Conn. 1, 505 A.2d 683 (1986). In that case, in which the defendant had been convicted of conspiracy to commit arson in the third degree, the court stated: "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy. . . . To sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree but also that they *intended to commit the elements of the offense.*" (Emphasis in original; internal quotation marks omitted.) Id., 3–4. "[P]roof of a conspiracy to commit a

specific offense requires proof that the conspirators *intended* to bring about the elements of the conspired offense." (Emphasis in original; internal quotation marks omitted.) Id., 5. The court therefore vacated the conviction because one of the elements of the crime was the reckless damage to or destruction of a building and, the court concluded, "conspirators cannot agree to accomplish a result recklessly when that result is an essential element of the crime . . . ." Id. Thus, *Beccia* stands for the proposition that a conspiracy charge requires proof of intent to commit all of the elements of the conspired offense. *Beccia* does not answer the question posed by the present case, however, because, unlike the present case, in which the questioned element—namely, the display of what is represented to be a deadly weapon—does not carry any specific mens rea with it, in *Beccia* the questioned element—recklessly causing damage to property—does carry a specific mens rea with it, namely, recklessness. See General Statutes § 53a-5.[1]

In *State* v. *Crosswell*, 223 Conn. 243, 256, 612 A.2d 1174 (1992), the court posed the question in the following terms: "If two or more persons conspire to take particular property from someone who has a superior right of possession, and agree to do so peacefully, do subsequent changes in the modus operandi to accomplish the taking operate to discharge a willing participant from culpability?" The court did not need to answer that question, however, because there was sufficient evidence "from which the jury might reasonably

[1] General Statutes § 53a-5 provides: "When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly' or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."

have inferred the defendant's acquiescence in this enlarged criminal enterprise." Id.

The question has been answered, however, at least implicitly, by our Supreme Court in *State* v. *Padua*, supra, 273 Conn. 138. In that case, the defendants were convicted of conspiracy to sell marijuana within 1500 feet of a public housing project. Id., 145. The court stated that it was an essential element of the conspiracy charge that the conspirators agreed to sell marijuana specifically within 1500 feet of a public housing project. Id., 166. The Supreme Court held, in accord with the state's concession, that the trial court's instruction, which had omitted this element, was improper but that the impropriety was harmless beyond a reasonable doubt. Id. In doing so, the court again reaffirmed the notion that "[p]roof of a conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Internal quotation marks omitted.) Id., 167. This must be read to establish the notion that the specific intent required by the conspiracy statute requires specific intent to bring about *all* of the elements of the conspired offense, even those that do not by themselves carry a specific intent with them, because it was already settled law that in a prosecution for sale of drugs within 1000 feet of a school, the state need not prove that the defendant knew that his sale was within 1000 feet of a school. See *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995) ("[T]he plain language of [General Statutes] § 21a-278a [b] requires as an element of the offense an intent to sell or dispense the narcotics at a location that is within 1000 feet of a school. The state is not, however, required to prove that the defendant knew that this location was within the zone.").

This court's case law, however, is somewhat in conflict on this issue. In *State* v. *Leggett*, 94 Conn. App. 392, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899

A.2d 39 (2006), the defendant was convicted of the same offense as that involved in the present case, namely, conspiracy to commit robbery in the second degree in violation of § 53a-135 (a) (2). In rejecting the defendant's argument that "the state must prove separately his intent to use or threaten the use of physical force," this court held that "[t]he larceny component of robbery, as described in General Statutes § 53a-119, is an intent crime. The use or threatened use of force described in General Statutes § 53a-133, however, has no additional intent element. The state, therefore, need only prove that the defendant intended the larceny and carried it out through the use or threatened use of physical force." Id., 402–403 n.14. A fortiori, in such a case the state need not prove the additional aggravating circumstance of the use or threat of the use of what is represented to be a deadly weapon or dangerous instrument.

*Leggett*, however, has been essentially overtaken by subsequent case law in this court. In *State* v. *Haywood*, 109 Conn. App. 460, 952 A.2d 84, cert. denied, 289 Conn. 928, 958 A.2d 161 (2008), this court read *Padua* as answering the question posed by the Supreme Court in *Crosswell*. We stated: "We believe, moreover, that the question posed in *Crosswell* was later answered in *Padua*, which, as noted, held that, for culpability, one must conspire to commit the particular crime and not merely to perform an undefined criminal act." Id., 476 n.13.

Furthermore, in *State* v. *Palangio*, 115 Conn. App. 355, 973 A.2d 110 (2009), the defendant was charged with conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4).[2] Robbery in the first degree under that

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threat-

section is defined as robbery during the course of which the robber or another participant "displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver . . . or other firearm . . . ." General Statutes § 53a-134 (a) (4). The state in *Palangio* contended that it was not necessary to prove that the defendant knew that his coconspirator would use a firearm during the robbery. *State* v. *Palangio*, supra, 362. This court disagreed, relying on *State* v. *Padua*, supra, 273 Conn. 138, for the proposition that "[p]roof of conspiracy to commit a specific offense requires proof that the conspirators intended to bring about the elements of the conspired offense." (Internal quotation marks omitted.) *State* v. *Palangio*, supra, 362. Thus, the court in *Palangio* concluded that the state was required to prove that the defendant and his coconspirator agreed to commit robbery, and that he "intended to commit robbery with a firearm . . . ." Id.

With this background in mind, I now turn to the anomaly that it has produced. It is fundamental in our criminal law that there is no legal difference between liability as an accessory and liability as a principal. *State* v. *Gonzalez*, 300 Conn. 490, 507, 15 A.3d 1049 (2011). Liability as an accessory is "legally indistinguishable" from liability as a principal because the accessory statute specifically provides that an accessory may be "prosecuted and punished as if he were the principal offender." (Internal quotation marks omitted.) Id. Put another way: "Under [General Statutes] § 53a-8, accessorial liability is not a distinct crime, but only an alternative means by which a substantive crime may be committed . . . ." (Internal quotation marks omitted.) Id., 500. It is also well established, under the Supreme Court's holding in *State* v. *Crosswell*, supra, 223 Conn.

---

ens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm · . . . ."

261 n.14, "that when a defendant is charged with robbery in the first degree on the basis that he or another participant . . . is armed with a deadly weapon; General Statutes § 53a-134 (a) (2); the defendant need not be proven to have intended to possess a deadly weapon." (Internal quotation marks omitted.) Under our Supreme Court's similar holding in *State* v. *Avila*, 223 Conn. 595, 609, 613 A.2d 731 (1992), it is also well recognized that a defendant charged as an accessory to robbery in the first degree under the same section need not be proven to have intended to possess a deadly weapon.

These principles of interpretation were recently reaffirmed and explained—as I will discuss in more detail—by our Supreme Court in *State* v. *Gonzalez*, supra, 300 Conn. 502. In *Gonzalez*, the defendant was charged as an accessory to manslaughter in the first degree with a firearm under General Statutes §§ 53a-8 and 53a-55a, which requires proof that "in the commission of [the offense of manslaughter in the first degree] he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses, a firearm.[3] General Statutes § 53a-55a (a). The court held that the language referred to previously—namely, that the perpetrator "uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses," a firearm—is simply an aggravating circumstance of the underlying crime for which no specific mental state is required and which, therefore, "drops out of the calculation" insofar as proof of a mental state is required. (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 505. Thus, in *Gonzalez*, our Supreme Court affirmed the defendant's conviction of manslaughter in the first degree with a firearm as an accessory, concluding that the state did not have to prove that the defendant specifically intended that

---

[3] I note the singular similarity of this statutory language to that in the present case.

a firearm be used in the commission of the offense. Id., 506.

Consequently, if a defendant is charged either *as a principal or an accessory* to robbery in the second degree in violation of § 53a-135 (a) (2), under *Crosswell, Avila* and *Gonzalez* the state *would not be required* to prove that he, or another participant, specifically intended to possess or display a deadly weapon or dangerous instrument. Yet, if the defendant is charged with *conspiring* to commit robbery in the second degree, the offense involved in the present case, under the same Penal Code provision, according to *Padua, Haywood* and *Palangio* the state *is required* to prove that he or another participant specifically intended to possess or display a deadly weapon or dangerous instrument.

The anomaly in these lines of precedent is this: it means that, in charging the *inchoate*[4]—or *incompleted*—crime of conspiracy to commit a particular offense, the state is required to prove *more*, by way of mens rea, than it is required to prove when it charges the *completed crime* itself. It is difficult, if not impossible, to see why the legislature would put that anomalous burden on the state. Our statutes are to be read, where possible, with common sense; see *State* v. *Courchesne,* 296 Conn. 622, 710, 998 A.2d 1 (2010); and as forming a coherent, rational whole, rather than as forming an anomalous, inconsistent scheme. See *Aspetuck Valley Country Club, Inc.* v. *Weston,* 292 Conn. 817, 829, 975 A.2d 1241 (2009) ("we read related statutes to form a consistent, rational whole, rather than to create irrational distinctions" [internal quotation marks omitted]). That principle is particularly appropriate for interpretation of the Penal Code, which was enacted to rationalize our state's former patchwork quilt of criminal laws. It

---

[4] See part III of the Penal Code, titled "Inchoate Offenses," the very first of which is the conspiracy statute, § 53a-48.

is simply anomalous that the state would be required to prove a greater mens rea for an *inchoate crime*— conspiracy—than for the *completed crime* itself.

Furthermore, the conspiracy section of our Penal Code, § 53a-48, is based on the New York Revised Penal Law. Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. § 53a-48 (West 2007). Thus, decisions by the New York courts construing the same language as that in our Penal Code have long been held to be instructive in construing our Penal Code language. See *State* v. *Courchesne*, supra, 296 Conn. 671 ("this court may turn to the parallel statutory provisions set forth in the Model Penal Code and the [revised] New York . . . Penal Law . . . for guidance" [internal quotation marks omitted]); see also *State* v. *Henry*, 253 Conn. 354, 363, 752 A.2d 40 (2000) ("[w]e note that our Penal Code is modeled after the New York Penal [Law]"). In this regard, the Appellate Division of the Supreme Court of New York has characterized Penal Law § 105.00, which is the basic conspiracy statute in New York and which contains precisely the same language as our § 53a-48,[5] as "a general conspiracy statute."[6] *People* v. *Joyce*, 100 App. Div. 2d 343, 347, 474 N.Y.S.2d 337, leave to appeal denied, 62 N.Y.2d 807 (1984). Thus, the court in *Joyce* contrasted New York's § 105.00, which, in its view, did not require a specific intent to commit aggravating circumstances, with Penal Law § 105.10,[7] which had more specific mens

[5] New York Penal Law § 105.00 (McKinney 2009) provides: "A person is guilty of conspiracy in the sixth degree when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."

[6] I have not found any decision of the New York Court of Appeals construing Penal Law § 105.00.

[7] New York Penal Law § 105.10 (McKinney 2009) provides in relevant part: "A person is guilty of conspiracy in the fourth degree when, with intent that conduct constituting . . . a class B or class C felony be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct . . . ."

rea language and did, therefore, require proof of intent to commit the aggravating circumstance. Id.

It may well be that this anomaly can be explained by the fact that our courts, in interpreting the language of the conspiracy statute, lost sight of the difference between the criminal law concepts of general intent and specific intent, and assumed that the mens rea language of § 53a-48 referred to general as well as specific intent.[8] That difference has recently been illuminatingly discussed by our Supreme Court in *State* v. *Gonzalez*, supra, 300 Conn. 490. In that case, as I noted previously, the defendant was charged, as an accessory, with manslaughter in the first degree with a firearm, and the issue was whether the court was required to instruct the jury that he specifically intended to use or display what was represented to be a firearm. Id., 498–99. In answering that question in the negative, the court explained the difference between general and specific intent.

The term "general intent" refers, in criminal law parlance, to the fact that "the perpetrator act volitionally in some way"; id., 502; as opposed to the perpetrator acting inadvertently. It requires no more than "an intention to make the bodily movement which constitutes the act which the crime requires. . . . Such an intent, to perform certain acts proscribed by a statute, we have referred to as the general intent ordinarily required for crimes of commission rather than omission." (Internal quotation marks omitted.) Id. In such crimes, that general intent is always "implicitly a part of the state's burden of proof and, in that sense, an element of the crime." (Internal quotation marks omitted.) Id., 502 n.14. Furthermore, unless there is some evidence in the case indicating that the perpetrator's conduct may not

---

[8] I acknowledge that I was part of the Supreme Court panel that decided *State* v. *Padua*, supra, 273 Conn. 138.

have been voluntary in this sense—may have been inadvertent or accidental, for example—there is ordinarily no need for a jury charge on that aspect of the case. Id. The term "specific intent," by contrast, requires more; it refers to the specific criminal mental state provided by the statute defining the crime charged.[9] See id., 501–502; see also *State* v. *Nixon*, 32 Conn. App. 224, 249, 630 A.2d 74 (1993) ("[w]hen the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring a specific intent"), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995).

Therefore, the court concluded in *Gonzalez*, the language, "in the commission of such offense [the perpetrator] uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses" a firearm, "[l]ack[s] a specifically enumerated mental state . . . clearly indicat[ing] . . . that the firearm element is one of general intent, requiring only that the perpetrator act volitionally in some way to use, possess or threaten to use a firearm in the commission of the offense." (Internal quotation marks omitted.) *State* v. *Gonzalez*, supra, 300 Conn. 501–502; accord *State* v. *Miller*, 95 Conn. App. 362, 896 A.2d 844, cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006). Our Supreme Court made clear in this context that the element of the use or threat of a firearm was one of general intent, and not specific intent, and, therefore, the state was not required to prove it and the court was not required to instruct on that element. *State* v. *Gonzalez*, supra, 503. Significantly, the court stated that, in such a prosecution, "the state must prove only that the perpetrator acted voluntarily to use, possess or threaten to

---

[9] This is the type of intent to which the Penal Code refers in § 53a-5, namely, such states of mind as intentionally, knowingly, recklessly or criminal negligence.

use a firearm in the commission of the offense, *with no obligation to prove any mental state beyond that required by the underlying manslaughter statute.*" (Emphasis added.) Id. Thus, the court drew a parallel between the specific intent required for the underlying substantive crime and the specific intent required for committing it as an accessory; an accessory perpetrator need have no more of a specific mental state than the specific mental state required for the crime to which he is an accessory.

This discussion may illuminate where our precedents on conspiracy may have gone off the track, so to speak. Viewing the present case through this prism, the element of use or threat of the use of, or display of, what is represented to be a deadly weapon or dangerous instrument, under § 53a-135 (a) (2), would be an element of general, not specific, intent, and would simply be viewed as an aggravating circumstance of the crime that does not carry with it a specific intent. See id., 502. As applied to the conspiracy statute, this would mean that the mens rea element of § 53a-48, namely, that the defendant, acting "with intent that conduct constituting a crime be performed . . . agrees with one or more persons to engage in or cause the performance of such conduct," refers, not to the general intent aspects of the crime conspired to be committed, but only to the specific intent aspects thereof. It would also mean that when a conspiracy is charged, the state would be required to prove that the defendant had the same *specific* intent required for the underlying crime, but not the *general* intent attached to that crime. Under that analysis, a conspiracy charge would carry the same mens rea burden as the substantive crime—no less, but no more. And this analysis would eliminate the anomaly that I have identified.

This analysis would also be consistent with that part of the official commentary to § 53a-48 of the Penal Code

that refers to the mens rea for conspiracy. That commentary provides: "A second change is the requirement that the defendant must have a specific intent to agree in the performance or causation of criminal conduct. A general intent to promote or facilitate the criminal object or means is not sufficient to establish guilt." Commission to Revise the Criminal Statutes, Penal Code Comments, supra, commission comment, § 53a-48. The reference to "performance or causation of criminal conduct" refers simply to the underlying crime conspired to be committed, including, however, only its specific intent elements. Thus, it means that the conspiracy charge requires the same specific intent as is required for the underlying crime—no less, but no more.

Although it is a legitimate function of a judge of an intermediate appellate court to point out, where appropriate, an anomaly in governing Supreme Court precedent and possible reasons and solutions, as I have done here, it is not my function to do anything more. See *State* v. *Robinson*, 105 Conn. App. 179, 201, 937 A.2d 717 (2008) ("as an intermediate appellate court, it is beyond our function to overrule controlling Connecticut Supreme Court precedent"), aff'd, 290 Conn. 381, 963 A.2d 59 (2009). If anything is to be done to correct such an anomaly, it is for our Supreme Court to do so.

