******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAHSIM T.*
(AC 36708)

Alvord, Mullins and Schaller, Js.

*Argued January 5—officially released May 17, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Cradle, J.)

*Pamela S. Nagy*, assistant public defender, with
whom, on the brief, was *Janice Wolf*, senior assistant
public defender, for the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney,
with whom, on the brief, was *John C. Smriga*, state's
attorney, for the appellee (state).

*Opinion*

MULLINS, J. Following a trial to the court, the defendant, Jahsim T., appeals from the judgment of the court adjudicating him a youthful offender for committing the crime of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48, 53a-134 (a) (4), and 54-76b. On appeal, the defendant claims that (1) the evidence was insufficient to support his adjudication for having committed conspiracy to commit robbery in the first degree, and (2) the court erred in denying his motion to dismiss based on the state's failure to obtain and produce a relevant videotape that contained evidence used against him. We agree with the defendant's first claim. Accordingly, we reverse the judgment of adjudication as a youthful offender and remand the case to the trial court with direction to render a judgment of acquittal.[1]

The following facts, as found by the trial court, and procedural history are relevant to our analysis. On March 8, 2013, the minor defendant and four of his friends were inside a local market, near the defendant's home, at approximately 10:30 p.m. The defendant wore a monitoring device on his ankle. The market had a video surveillance system that recorded the defendant's presence and his interactions with the market employee, but it had no audio component. The defendant asked a market employee if he could use the telephone, but the employee said no. The defendant then used a cell phone to make a call. While on the phone, the defendant asked the employee for the address of the store, but the employee was unsure; the defendant then asked for the zip code, which the employee gave to him. The employee overheard portions of the defendant's telephone conversation and thought he was ordering something. After completing the telephone call, the defendant and his friends left the market.

At approximately 10:40 p.m., Pizza Hut in Bridgeport received a telephone call from someone purporting to be "Sarah." Sarah placed a food order for one large pizza and two orders of chicken wings to be delivered to 319 East Avenue, which was just a few doors down from the market. At approximately 10:55 p.m., the deliveryman was dispatched to deliver the order.

When the deliveryman arrived at 319 East Avenue, he saw a young man on the porch, who was wearing sweatpants. He asked the young man if he had ordered a pizza, and the young man responded affirmatively. The deliveryman then got out of his vehicle, with the items that had been ordered, and approached the porch. When he got to the porch, he was approached on the right by a masked man holding a shotgun, who told him to "hold it right there." Then, another person approached the deliveryman from the left, and all three then attacked, punching, kicking, and hitting the deliv-

eryman in the head with the shotgun. The attackers took money from the deliveryman's pockets and then went through his vehicle, stealing his cell phone, global positioning system (GPS) holder and other things. After beating and robbing the deliveryman, the attackers ran down the street. There was no evidence that the defendant was present at the scene of the robbery.

When investigating the robbery, members of the Bridgeport Police Department stopped at the market to ask questions. While there, they viewed the surveillance video, and the market employee pointed out the defendant and his friends on the video. Jose Morel, the owner of the market, recognized the defendant on the video as well.

The officers then received a tip that people involved in the robbery were located in a multiunit garage near the market. The police went to this multiunit garage, and, when they opened the garage door, they heard people running. Police then discovered the deliveryman's GPS holder, a chicken wing box, and the pizza warmer bag. The police apprehended an individual as he was running from the garage, and arrested him. They recovered a cell phone from him, which matched the phone number of the cell phone used to call Pizza Hut for the delivery to 319 East Avenue. The police recognized this person as one of the people on the surveillance video standing near the defendant at the market. There was no evidence that the defendant was present in this multiunit garage when the police arrived there.

The defendant was arrested on March 9, 2013, and charged as a youthful offender with robbery in the first degree in violation of §§ 53a-134 (a) (4) and 54-76b, assault in the first degree in violation of General Statutes §§ 53a-59 (a) (4) and 54-76b, and conspiracy to commit robbery in the first degree in violation of §§ 53a-48, 53a-134 (a) (4), and 54-76b. Following the state's case, the defendant filed a motion for a judgment of acquittal on all charges. The court, *Cradle, J.*, granted the motion as to the robbery and assault charges, finding that there was no evidence that the defendant was present at the scene of the robbery, but denied it as to the charge of conspiracy to commit robbery in the first degree. The court later adjudicated the defendant a youthful offender for having committed conspiracy to commit robbery in the first degree, and it sentenced him to four years incarceration, suspended after two years, followed by three years probation. This appeal followed.

On appeal, the state concedes, and we agree, that the evidence was insufficient to support the defendant's adjudication as a youthful offender for committing conspiracy to commit robbery in the first degree because there was no evidence, direct or circumstantial, that the defendant had agreed or intended that his coconspirators would use a firearm during the robbery. Cf.

*State* v. *Pond*, 138 Conn. App. 228, 234, 50 A.3d 950 (2012) (for conviction of conspiracy to commit robbery in second degree, state must prove that defendant specifically agreed and intended that what was represented to be deadly weapon or dangerous instrument would be used or displayed during robbery), aff'd, 315 Conn. 451, 108 A.3d 1083 (2015); see also *State* v. *Pond*, 315 Conn. 451, 489, 108 A.3d 1083 (2015) (same). Thus, the state concedes that the defendant's adjudication as a youthful offender for committing conspiracy to commit robbery in the first degree cannot stand.

The state argues, however, that by finding that the defendant had conspired to commit robbery in the first degree, the court necessarily found that he had committed the lesser included offense of conspiracy to commit robbery in the third degree. Therefore, the state contends that the appropriate disposition is to remand the matter to the trial court with direction to modify the basis of the adjudication to the lesser included offense of conspiracy to commit robbery in the third degree as a youthful offender in violation of General Statutes §§ 53a-48, 53a-136 (a), and 54-76b.

The defendant counters the state's contention by arguing that, not only was there no evidence of an agreement to use a firearm, there was no evidence that the "defendant conspired with anyone to commit a robbery . . . ." He further argues, however, that even if there is inferential evidence that he conspired to commit robbery in the third degree, which there is not, after we reverse the present judgment of adjudication as a youthful offender based on the crime of conspiracy to commit robbery in the first degree, the matter should be remanded to the trial court with direction to render a judgment of acquittal. The defendant argues that this is appropriate because the state never sought to charge him with a lesser included offense. He also contends that his trial strategy might have been different if the state had charged him in the alternative. Ultimately, he contends that it would be unfair to modify the basis of his adjudication as a youthful offender to a lesser included offense under the circumstances of this case.

On the basis of *State* v. *LaFleur*, 307 Conn. 115, 51 A.3d 1048 (2012), we conclude that a modification of the defendant's conviction is inappropriate and that the case must be remanded to the trial court with direction to render a judgment of acquittal.[2]

When a judgment of conviction is reversed for insufficient evidence as to one of the elements that distinguish that crime from an uncharged lesser included offense, a modification of the judgment may be appropriate only if it would not be unfair to the defendant. Id., 143. In assessing whether such a modification would not be unfair to a defendant, our Supreme Court, in *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009), set out and applied four factors to assist with that determi-

nation: "First, [we consider whether there is] reason to believe that the state opted against [charging the defendant or] seeking a jury instruction on the lesser offense . . . for strategic purposes. . . . Second, [we consider whether there had been a change in the law after the defendant's trial and whether] the defendant has benefited from [that change without raising the issue] . . . . Third, [we consider whether] the defendant . . . has . . . object[ed] to the state's request for a modification of the judgment. . . . Finally, [we consider whether] it would be unfair to the defendant to impose a conviction of [the lesser offense] . . . ." (Citation omitted.) Id., 595; see also *State* v. *LaFleur*, supra, 307 Conn. 143.

In *LaFleur*, our Supreme Court, guided by *Sanseverino*, also considered whether it would not be unfair to the defendant in that case to impose a conviction of a lesser included offense after it concluded that there was insufficient evidence to support his conviction of the greater offense. *State* v. *LaFleur*, supra, 307 Conn. 141–54. The defendant in *LaFleur* had been charged with assault in the first degree for beating the female victim severely with his fists. Id., 121. The trial court instructed the jury that the defendant's fists could be dangerous instruments. Id., 123. Following his conviction, the defendant appealed. Id., 119.

On appeal, the defendant claimed in relevant part that there was insufficient evidence to support his conviction of assault in the first degree because his fists were not dangerous instruments. Id. He also contended that the judgment of conviction should not be modified to the lesser included offense of assault in the second degree but, rather, that our Supreme Court should direct the entry of a judgment of acquittal. Id., 140–41. Our Supreme Court agreed that fists were not dangerous instruments, and, therefore, that there was insufficient evidence to support the conviction of assault in the first degree. Id., 140. Given that determination, the state requested that the Supreme Court order a modification of the judgment of conviction to the lesser included offense of assault in the second degree. Id., 141–42. The state, however, had not requested a jury instruction on the lesser included offense, and therefore, the jury could not have found the defendant guilty of assault in the second degree. Id., 142. Nevertheless, the state argued that modifying the judgment would not be unfair to the defendant because the jury necessarily found that the defendant had committed assault in the second degree by virtue of its finding that he had committed all the elements of the greater offense of assault in the first degree. Id., 144. Thus, the court considered whether it should order a modification of the judgment of conviction to assault in the second degree, as requested by the state, or whether it should direct a judgment of acquittal. Id., 140–54.

Looking to *Sanseverino* for guidance, our Supreme Court determined that it could not conclude that "it would be fair to the defendant to modify the judgment of conviction," and, accordingly, it reversed the judgment of conviction and remanded the matter to the trial court with direction to render a judgment of acquittal. Id., 153. The court in *LaFleur* reviewed the following factors when making its assessment: First, the court considered whether this decision amounted to a change in the law. Id., 147. The court determined that its conclusion that fists were not dangerous instruments could not be characterized as a change in the law, but that it merely "raise[d] a known question of first impression for [the] court." Id. Second, the court determined whether the state's decision to not request a jury charge on the lesser included offense was a matter of strategy, so as to avoid a verdict of guilty on that charge rather than on the greater offense, and it concluded that the state's decision was strategic. Id., 147–48.

Third, the court examined whether the defendant had benefited from a change in the law that he had not raised as a basis for his appeal. Id., 148–49. The court determined that the defendant, in fact, had raised and diligently pursued a known issue of first impression, namely, that fists are not dangerous instruments. Id. Fourth, the court considered whether the defendant specifically had objected to the state's request that the court remand the matter with direction to modify the judgment of conviction to reflect the uncharged lesser included offense, and it concluded that the defendant properly had objected. Id., 150.

Fifth, the court considered whether it could "be sure that the defendant . . . did not forgo a particular trial strategy due to the lack of a lesser included offense . . . ." Id., 151. The court concluded that it could not be sure if the defendant would have employed a different strategy had he been susceptible to a conviction of the lesser included offense. Id.

After examining these five factors, and finding that they favored the defendant, the court concluded that "because [it had] not determined that, under the unique circumstances of [that case], it would be fair to the defendant to modify the judgment of conviction . . . [it] must reverse the defendant's conviction of assault in the first degree . . . and remand that case to the trial court with direction to render judgment of acquittal . . . ." Id., 152–54.

In the present case, the defendant contends that *LaFleur* is on point with his case and that it controls the outcome of this appeal. We agree.

Following the decisions of our Supreme Court in *LaFleur* and *Sanseverino*, we next apply the factors employed in those cases in order to determine whether a modification of the judgment would not be unfair to

the defendant.

First, we consider whether this case has brought about a change in the law or whether the law recently has been changed. See id., 147. We conclude that this case has not changed the law, nor has the law changed recently. Here, the state was on notice that it was required, pursuant to *State* v. *Pond*, supra, 138 Conn. App. 234, to prove that the defendant, whom it had charged with conspiracy to commit robbery in the first degree as a youthful offender, had the specific intent that his coconspirators would use a firearm to rob the pizza deliveryman. Although the state contends that, at the time of the defendant's trial, our Supreme Court had granted certification to appeal in *Pond* specifically on the issue of whether the state had to prove that the defendant had the specific intent that his coconspirators would use what they represented to be a deadly weapon or dangerous instrument during a robbery, and that this is "noteworthy," our appellate decision in *Pond* was released on September 25, 2012, more than one year before the defendant's trial. "It is axiomatic that [a] decision of [an appellate court] is a controlling precedent until overruled or qualified. . . . [S]tare decisis . . . serve[s] the cause of stability and certainty in the law—a condition indispensable to any well-ordered system of jurisprudence . . . ." (Internal quotation marks omitted.) *Ferrigno* v. *Cromwell Development Associates*, 44 Conn. App. 439, 443, 689 A.2d 1150 (1997), aff'd, 244 Conn. 189, 708 A.2d 1371 (1998); see also *Burns* v. *Adler,* 158 Conn. App. 766, 792, 120 A.3d 555 (previous decision of Appellate Court binding "until it is overruled either by our Supreme Court or by an en banc panel of this court"), cert. granted on other grounds, 319 Conn. 931, 125 A.3d 205 (2015). Accordingly, we conclude that the law has not changed recently, and, therefore, this factor is not relevant to the present case.

Second, we consider whether there is reason to believe that the state, for strategic purposes, chose not to charge the defendant with the lesser included offense of conspiracy to commit robbery in the third degree. *State* v. *LaFleur*, supra, 307 Conn. 147. The defendant argues that the state "could have either charged the defendant with conspiracy to commit robbery in the third degree, or it could have argued that such a conviction was appropriate during summation.[3] The state did neither one of these things, and it should not be rewarded on appeal when it never put the defendant on notice that it was seeking a conviction for conspiracy to commit robbery in the third degree. . . . [T]he state . . . had the responsibility to bring the proper charges and to put the defendant on notice as to those charges." (Citation omitted; footnote added.) We agree with the defendant.

As stated previously, the state was on notice of the elements required to prove that the defendant was guilty

of conspiracy to commit robbery in the first degree. Despite its knowledge of the required elements of that offense, the state chose not to charge the defendant with the lesser included offense. Thus, knowing that *Pond* already had changed the law in 2012, the state strategically sought an adjudication solely on the greater offense without giving the court the option of an adjudication on the lesser included offense.

The third factor we consider is whether there was a change in the law after the defendant's trial and whether the defendant is seeking to benefit from that change without having raised the issue himself on appeal. *State* v. *LaFleur*, supra, 307 Conn. 148. As previously stated in our discussion of the first factor, the law has not changed recently, and the defendant in this case has raised the relevant issue, namely, that on the basis of *Pond*, his adjudication as a youthful offender for conspiracy to commit robbery in the first degree cannot stand.

The fourth factor we consider is whether the defendant has voiced an objection to the state's request for a modification of the conviction. *State* v. *LaFleur*, supra, 307 Conn. 150. We conclude that the defendant has objected and has fully briefed his objection to this court.

Finally, the fifth factor we consider is whether we can be sure that the defendant would not have undertaken a different trial strategy had he been charged with the lesser included offense. Id., 151. As our Supreme Court noted in *LaFleur*, "we cannot be sure that the defendant in the present case did not forgo a particular trial strategy due to the lack of a lesser included offense charge. Regardless of whether the defense challenged the state's claims as to elements of the lesser included charge, trial strategy . . . [is] inevitably colored by the inclusion of a lesser included charge to the jury." Id. We take this language to mean that whether a defendant's trial strategy is colored turns, in this context, on the presence or absence of a lesser included offense rather than the fact that it is a jury trial.

In the present case, we not only have this general truism from *LaFleur* regarding the inevitable coloring of a defendant's trial strategy when a lesser included offense is in play, but the defendant also explicitly argues that he may have defended his case differently had he also been charged with this lesser included offense. Indeed, when asked during oral argument to give one example of something he may have done differently at trial, the defendant responded that he had not contested that he was at the market shortly before the Pizza Hut deliveryman was beaten and robbed just a few doors down from the market, and that he likely would not have left that factual assertion uncontested. Thus, like the court in *LaFleur*, we cannot conclude that the defendant's trial strategy would not have been different had the state also charged him with the lesser

included offense. See id.; see also footnote 2 of this opinion.

On the basis of these factors, guided by our Supreme Court's decision in *LaFleur*, we cannot conclude that it would be fair to the defendant to order a modification of the judgment of adjudication as a youthful offender. Accordingly, the judgment must be reversed and a judgment of acquittal directed.

The judgment is reversed and the case is remanded with direction to render a judgment of acquittal.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

[1] Because we conclude that the defendant's conviction must be reversed and a judgment of acquittal ordered, we do not consider his second claim on appeal.

[2] Even if we were not constrained by our Supreme Court's decision in *LaFleur*, we are not necessarily persuaded that we would automatically remand the case to the trial court with direction to modify the basis of the adjudication as a youthful offender to conspiracy to commit robbery in the third degree, which is the specific modification the state is requesting. Although the state concedes that there was no evidence that the defendant knew or agreed that his coconspirators would employ the use of a firearm in this case, we question what evidence there is, inferential or otherwise, that the defendant knew or intended that his coconspirators would use or threaten the use of force in obtaining the pizza and related items that he is alleged to have ordered on their behalf. As our Supreme Court explained in *State* v. *Pond*, 315 Conn. 451, 453, 108 A.3d 1083 (2015): "General Statutes § 53a-48 (a), Connecticut's criminal conspiracy statute, provides that '[a] person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy . . .' [which means that] . . . to be convicted of conspiracy, a defendant must specifically intend that every element of the planned offense be accomplished, even an element that itself carries no specific intent requirement. . . . [W]e are not persuaded that the legislature intended to punish offenders for conspiring to commit crimes that they never agreed or intended to commit . . . ." (Footnote omitted.) Because we are reversing the judgment on the basis of *LaFleur*, however, we need not conduct a separate and complete analysis of this issue.

[3] We offer no opinion on the defendant's statement that the state, during closing argument, could have argued for a possible conviction of a lesser included offense without having given the defendant notice of its intention to do so.