******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* JAYEVON BLAINE
### (AC 36832)

Sheldon, Prescott and Beach, Js.

*Syllabus*

Convicted of the crime of conspiracy to commit robbery in the first degree, the defendant appealed to this court. The defendant's conviction stemmed from his involvement in an alleged conspiracy with four other individuals to rob a drug dealer, which resulted in the shooting death of the victim. At trial, the four coconspirators each testified that they, together with the defendant, had devised a plan to rob the drug dealer with a weapon and that the defendant would carry the weapon. In its jury charge, the court instructed on the elements of the substantive crime of robbery in the first degree, including that one or more participants in the robbery be armed with a deadly weapon, and that to find the defendant guilty of conspiracy, the jury had to find that he specifically intended to commit the substantive crime. On appeal, the defendant claimed, inter alia, that the trial court had committed plain error in failing to instruct the jury, in accordance with *State* v. *Pond* (138 Conn. App. 228), regarding the requisite intent necessary to find him guilty of conspiracy to commit robbery in the first degree. This court affirmed the judgment of the trial court, concluding that the defendant had waived his claim and that relief under the plain error doctrine was unavailable. Thereafter, the defendant filed a petition for certification with our Supreme Court, which granted the petition and remanded the case to this court for consideration of his claim of plain error. On remand, *held* that the defendant could not prevail on his claim that the trial court committed plain error in failing to instruct the jury that to find him guilty of the subject conspiracy, it had to find that he intended and specifically agreed that a participant in the robbery would be armed with a deadly weapon: because the trial court charged the jury that to find the defendant guilty, it had to find that he specifically intended to commit the crime of robbery in the first degree and the armed with a deadly weapon requirement had been included in the definition of the underlying crime given by the trial court, it was at least arguable that the instruction logically required the jury to find that the defendant had agreed that a participant in the robbery be armed with a deadly weapon and, thus, it was fairly debatable whether the court's instruction as to the requisite intent was erroneous; moreover, even if the instruction constituted obvious and debatable error, it did not amount to manifest injustice, as there was ample evidence that the defendant had agreed to the robbery and that one of the participants would use a weapon, and, therefore, this court could not conclude that any error in the subject instruction affected the fairness and integrity of and public confidence in the judicial proceedings so as to necessitate reversal.

Argued October 4, 2017—officially released February 6, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of murder, attempt to commit robbery in the first degree, felony murder and conspiracy to commit robbery in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kahn, J.*; verdict and judgment of guilty of conspiracy to commit robbery in the first degree, from which the defendant appealed to this court, which affirmed the judgment; thereafter, the defendant filed a petition for certification to appeal with our Supreme Court, which granted the petition and remanded the case to this court for consideration of the defendant's

claim of plain error. *Affirmed.*

*Katherine C. Essington*, for the appellant (defendant).

*Adam E. Mattei*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Howard S. Stein*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. This case returns to us on remand from our Supreme Court with direction to consider the claim of plain error raised by the defendant, Jayevon Blaine, in light of *State* v. *McClain*, 324 Conn. 802, 155 A.3d 209 (2017).[1] The defendant previously appealed from the judgment of conviction of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2).[2] We held in our prior opinion that the waiver of a claim of instructional error pursuant to *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), precluded review of the claim of plain error. *State* v. *Blaine*, 168 Conn. App. 505, 517–19 and n.5, 147 A.3d 1044 (2016), remanded in part, 325 Conn. 918, 163 A.3d 618 (2017). In *State* v. *McClain*, supra, 815, our Supreme Court held that a *Kitchens* waiver did not preclude a claim of plain error. We now consider the defendant's claim that the trial court committed plain error by incorrectly instructing the jury on the requisite intent to find him guilty of conspiracy to commit robbery in the first degree. We conclude that the record does not support the claim that the pertinent instruction constituted plain error. Accordingly, we affirm the judgment of the trial court.

The following facts are relevant to this appeal.[3] After the killing of the victim, Kevin Soler, on Bretton Street in Bridgeport, the defendant was arrested and charged with murder in violation of General Statutes § 53a-54a (a), attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2), felony murder in violation of General Statutes §53a-54c, and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2). As we stated in our prior opinion: "[F]our people . . . together with the defendant, were charged with, inter alia, conspiracy to commit robbery in the first degree.

"All four of the defendant's coconspirators, [Jihad] Clemons, Craig Waddell, Hank Palmer, and Mike Lomax, who had known each other for several years but had only recently been introduced to the defendant, testified for the state at the defendant's trial. The crux of their testimony, as it related to the charge of conspiracy, was that they and the defendant had entered into an agreement to rob Robert Taylor, a drug dealer.[4]

"Clemons was the first of the conspirators to testify. He testified that on September 6, 2009, he and Waddell visited their friend, Braxton Gardner, and decided to buy some marijuana. To that end, Gardner made a phone call to Taylor, a drug dealer with whom he was familiar. Gardner met Taylor a block or two from his house and completed the purchase. Clemons, Waddell, and Gardner smoked the marijuana that they had purchased, and then Gardner left to attend his younger brother's football game.

"Shortly thereafter, Clemons and Waddell decided that they wanted more marijuana, so they called Gardner to get Taylor's telephone number. Clemons then called Taylor, who met them near Gardner's house and sold them more marijuana. While Clemons and Waddell were smoking the newly purchased marijuana, they walked to Palmer's house and discussed robbing Taylor. Lomax arrived at Palmer's house, and the four men discussed their plan to rob Taylor.

"Clemons, Waddell, and Lomax left Palmer's house—leaving Palmer behind—and drove Lomax' car, a white Honda, to [DeAndre] Harper's house to ask Harper if he would like to be involved in their planned robbery of Taylor. They found Harper outside on his porch with his cousin, the defendant. Harper and the defendant approached Lomax' vehicle, where they discussed the robbery. Clemons, Waddell, and Lomax first asked Harper if he wanted to participate in the robbery, but Harper declined. They then asked the defendant if he wanted to participate, and he agreed to do so. The defendant got into Lomax' vehicle, and the four men returned to Palmer's house.

"When they arrived at Palmer's house, the five men spent forty-five minutes further discussing their plan to rob Taylor. They agreed that Clemons would call Taylor to set up a meeting and that the defendant would rob him using a nine millimeter handgun, while Waddell stood nearby. Lomax would drive the car to the place of the meeting, and Palmer would stay in the car with Lomax. They agreed that they would steal Taylor's drugs, car, and cell phone.

"At some point after dark, the men went to meet Taylor. Taylor had told Clemons that he was running late because he had a flat tire. Clemons parted company with the others to go home because he was late for his curfew. Meanwhile . . . Taylor got a ride to the rendezvous with his friend, Soler, and Soler's girlfriend, [Priscilla] LaBoy. Soler parked at the agreed upon location, and a person appeared; Soler and the person conversed because Soler had agreed to conclude the sale on Taylor's behalf. The other person then shot Soler." (Footnote added.) *State* v. *Blaine*, supra, 168 Conn. App. 508–10. Soler was later found dead by the Bridgeport police. Id., 507.

The jury found the defendant guilty of conspiracy to commit robbery in the first degree but not guilty of the other charges. On appeal to this court, the defendant claimed that (1) there was insufficient evidence to sustain his conviction of conspiracy to commit robbery in the first degree,[5] (2) the court erred in denying his request for a jury instruction on third-party culpability, and (3) the court erred in failing to instruct the jury according to the principles set forth in *State* v. *Pond*, 138 Conn. App. 228, 50 A.3d 950 (2012), aff'd, 315 Conn.

451, 108 A.3d 1083 (2015). See *State* v. *Blaine*, supra, 168 Conn. App. 507, 517. In affirming the trial court's judgment, we concluded that there was sufficient evidence to sustain the defendant's conviction and that any error resulting from the court's failure to provide a third-party culpability instruction was harmless. Id., 507, 517. As to the defendant's third claim, that there was plain error under *Pond*, we concluded that plain error relief was unavailable. Id., 518.

The defendant then sought and was granted certification to appeal by our Supreme Court on his claim of plain error, and the case was remanded to this court with direction to consider the defendant's claim in light of *McClain*. See *State* v. *Blaine*, 325 Conn. 918, 163 A.3d 618 (2017). The only issue before us on remand is whether the trial court's instruction to the jury regarding the requisite intent for conspiracy to commit robbery in the first degree constituted plain error.

Two elements must be satisfied in order to support a conclusion that a judgment must be reversed on the basis of plain error. "An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application." (Internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 812.

"[T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . In addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Citation omitted; internal quotation marks omitted.) Id.

An appellant "cannot prevail . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) Id; see also *State* v. *Coward*, 292 Conn. 296, 307, 972 A.2d 691 (2009). "It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial

court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 813–14.

"Our standard of review for claims of instructional impropriety is well established. The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007).

The defendant claims that the trial court failed to instruct the jury that in order to find him guilty of the conspiracy with which he was charged, it had to find that he had intended that one or more participants in the robbery be armed with a deadly weapon and that the failure so to instruct constituted plain error. In *State* v. *Pond*, supra, 138 Conn. App. 233–34, we held that to be convicted of conspiracy, a defendant must have specifically intended that every element of the planned offense be accomplished, including elements of the underlying crime that do not require specific intent.

We turn to an analysis of the court's instructions to the jury in the present case. Two portions are especially pertinent. The court addressed the elements of the substantive crime of robbery in the first degree in violation of § 53a-134 (a) (2). The court instructed that robbery was a larceny committed by the use or threatened use of force. Larceny, in turn, required an intent to deprive another of property. The court then charged that the "third element" was that in "the course of the commission of the robbery or immediate flight from the crime the defendant or another participant in the crime was armed with a deadly weapon."

Later in the charge the court instructed on the elements of the crime of conspiracy to commit robbery in the first degree: "One, there was an agreement between the defendant and one or more persons to engage in conduct constituting the crime of robbery in the first degree; two, there was an overt act in furtherance of the agreement by any one of the persons; and, three, *the defendant specifically intended to commit*

*the crime of robbery in the first degree.*" (Emphasis added.)

The court defined "agreement" and "overt act," and then instructed: "Element three, criminal intent. The third element is that the defendant had the intent to commit robbery in the first degree. The defendant must have had specific intent. The defendant may not be found guilty unless the state has proved beyond a reasonable doubt that he specifically intended to commit robbery in the first degree when he entered into the agreement."

After defining specific intent, the court summarized its charge regarding conspiracy: "[One] the state must prove beyond a reasonable doubt that the defendant had an agreement with one or more persons to commit robbery in the first degree. Two, at least one of the coconspirators did an overt act in furtherance of the conspiracy and, three, the defendant specifically intended to commit robbery in the first degree."

The defendant claims that because the court did not expressly and specifically instruct the jury that, in order to find him guilty, it had to find that he specifically agreed that a participant in the crime would be armed with a deadly weapon, the court committed plain error. He relies primarily on *State* v. *Pond*, supra 138 Conn. App. 228.[6]

In *Pond*, the defendant was charged with attempt to commit robbery in the second degree and conspiracy to commit robbery in the second degree. Id., 232. The substantive crime of robbery in the second degree, as charged, included as an element the display or threatened use of a weapon. This court observed that the instructions in *Pond* were "to the effect that the specific intent required for the conspiracy charge was that as for a charge of larceny." Id., 237. The trial court instructed the jury as to the intent element of the conspiracy charge as follows: "The third element is that the defendant had the intent to commit robbery in the second degree. The intent for that crime is that at the time of the agreement he intended to commit larceny. The defendant may not be found guilty unless the state has proved beyond a reasonable doubt that he specifically intended to commit a larceny when he entered into the agreement." (Internal quotation marks omitted.) Id. The court then concluded: "In summary, the state must prove beyond a reasonable doubt that the defendant had an agreement with one or more other persons to commit robbery in the second degree, at least one of the coconspirators did an overt act in furtherance of the conspiracy, and the defendant specifically intended to deprive the owner of his property." (Internal quotation marks omitted.) Id., 237–38.

This court afforded review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and, relying

primarily on *State* v. *Padua*, 273 Conn. 138, 869 A.2d 192 (2005), reversed the judgment, because "[t]he court did not tell the jury that the state was required to prove that the defendant specifically intended that, in the course of the robbery, what was represented to be a deadly weapon or dangerous instrument would be used or displayed. Contrary to the state's argument, there is nothing in the rest of the language of the jury instructions that would render this omission in the instruction harmless." *State* v. *Pond*, supra, 138 Conn. App. 238–39.

There are similarities and distinctions between *Pond* and the present case. It is now well established that a conviction of conspiracy to commit a crime requires proof of specific intent to commit all elements of the underlying crime, even if only general intent or, conceivably, no intent at all is required as to one or more elements necessary for conviction of the underlying substantive crime. See *State* v. *Padua*, supra, 273 Conn. 138; see also *State* v. *Pond*, 315 Conn. 451, 108 A.3d 1083 (2015). In *Pond*, however, the trial court not only failed to instruct the jury that specific intent was required as to the display or threatened use of a weapon, it also expressly stated that the specific intent required to convict was that the defendant intended, at the time of agreement, to commit larceny.[7] Additionally, because the defendant in *Pond* prevailed pursuant to *Golding*, application of the plain error doctrine was not necessary.

In the present case, the court did not expressly limit the requirement of specific intent to fewer than all the elements of the substantive crime. The court, instead, charged that in order to find the defendant guilty, the jury had to find that he specifically intended to commit the crime of robbery in the first degree; the court previously had included in the definition of that substantive crime the element that one or more participants be armed with a deadly weapon. Because the "armed with a deadly weapon" element had been included in the definition of the underlying crime and the conspiracy charge required for conviction a finding that the defendant intended to commit the substantive crime, it is at least arguable that the instruction logically required the jury to find that the defendant had agreed that a participant would be armed with a deadly weapon. If it is fairly debatable whether an action of the trial court is erroneous, the error, if any, is not plain error, and the judgment should be affirmed. See *State* v. *McClain*, supra, 324 Conn. 812.

Even if the instruction did constitute obvious and undebatable error, however, the record does not satisfy the second prong required for reversal pursuant to the plain error doctrine, because the record does not show manifest injustice. See *State* v. *Coward*, supra, 292 Conn. 307 ("under the second prong of the [plain error doctrine] we must determine whether the consequences

of the error are so grievous as to be fundamentally unfair or manifestly unjust"). In *State* v. *Padua*, supra, 273 Conn. 164–65, for example, our Supreme Court considered a case in which conspiracy to sell marijuana within 1500 feet of a public housing project was alleged, and the trial court had not instructed that, in order to find the defendant guilty, the jury had to find that he agreed to commit the crime within 1500 feet of a public housing project.[8] Our Supreme Court held that, although the instruction was improper, the error was harmless in light of overwhelming evidence regarding intent to sell marijuana within 1500 feet of a public housing project.

In the present case, each of the four coconspirators testified that the plan was to rob Taylor with a weapon and that the defendant was to wield the weapon. Every witness who testified that the agreement existed also testified that use of a weapon was contemplated. Although the defendant denied involvement altogether, there was ample evidence that he had agreed to the robbery and that someone would use a weapon. A similar situation in *Padua* led to a conclusion of harmless error; here, we cannot find that a less egregious error, if indeed there was an error, amounted to manifest injustice. See also *State* v. *Lawrence*, supra, 282 Conn. 183 (possible defect in presumption of innocence instruction did not affect fairness of trial when instruction viewed in entirety); *State* v. *LaBrec*, 270 Conn. 548, 560, 854 A.2d 1 (2004) (instruction that original jurors should review their previous deliberations with substituted alternate juror not extraordinary error).

Under these circumstances, we cannot conclude that any error in the court's instructions to the jury affected "the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 812. Accordingly, we decline to reverse the trial court's judgment under the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *State* v. *Blaine*, 325 Conn. 918, 163 A.3d 618 (2017).

[2] General Statutes § 53a-48 provides in relevant part: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy. . . ."

General Statutes 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[3] See generally *State* v. *Blaine*, supra, 168 Conn. App. 506–507.

[4] Waddell was the only witness who gave a statement prior to the trial that he had seen the defendant shoot the victim. He testified during the trial, however, that he never actually saw the shooting, but that he stood at some distance from the defendant and only heard gunshots. The jury was allowed to hear testimony that Waddell had changed his statement.

[5] The defendant sought to bolster his claim by stressing that the jury found him not guilty of the substantive crimes charged, yet guilty of conspiracy,

where the evidence regarding the agreement also suggested that the defendant was the shooter. If the jury did not believe the testimony that he was the shooter, he argued, then it could not believe that he participated in the agreement. We rejected that contention in *State* v. *Blaine*, supra, 168 Conn. App. 512–13. The jury's verdict perhaps can be rationalized, though it need not be, by reference to the fact that no coconspirator testified that he saw the defendant shoot the victim. See footnote 4 of this opinion.

[6] Because the trial in the present case occurred after the Appellate Court's decision in *Pond* but before the Supreme Court's affirmance, we primarily consider the Appellate Court's opinion for the purpose of the plain error analysis.

[7] Thus, the jury logically could have concluded that the only specific intent required for conviction was the intent to commit a larceny.

[8] The correlation between the conspiracy charge and the underlying crime in *Padua* corresponded to the structures of this case and *Pond*, in that proof of intent to sell marijuana within 1500 feet of a public housing project was not required for conviction of the underlying offense.