******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* JAYEVON BLAINE
### (SC 20087)

Palmer, McDonald, D'Auria, Mullins, Ecker and Vertefeuille, Js.

*Syllabus*

Convicted of the crime of conspiracy to commit robbery in the first degree in connection with his involvement, along with that of four other coconspirators, in the shooting death of a drug dealer, the defendant appealed to the Appellate Court, claiming, inter alia, that the trial court's failure to instruct the jury on the requisite intent necessary to find him guilty of that offense constituted plain error. The trial court had instructed the jury on the elements of the substantive crime of robbery in the first degree, including the element that one or more participants in the robbery be armed with a deadly weapon, and that, to find the defendant guilty of conspiracy, it had to find that the defendant specifically intended to commit the substantive crime. On appeal, the defendant claimed that the court's instructions were plainly erroneous because they relieved the state of its burden of proving, as required by *State* v. *Pond* (138 Conn. App. 228), that he specifically intended that every element of the conspired offense be accomplished because the court did not expressly instruct the jury that, to return a guilty verdict, it must find that he had agreed and specifically intended that he or one of his coconspirators would be armed with a deadly weapon. The Appellate Court affirmed the judgment of conviction, concluding, inter alia, that the defendant implicitly had waived his unpreserved claim of instructional error and, therefore, was not entitled to relief under the plain error doctrine. Thereafter, this court granted the defendant's petition for certification to appeal and remanded the case to the Appellate Court with direction to reconsider the defendant's plain error claim in light of this court's decision in *State* v. *McClain* (324 Conn. 802), which held that an implicit waiver does not foreclose appellate review of unpreserved claims of instructional error under the plain error doctrine. On remand, the Appellate Court again affirmed the judgment of conviction, concluding that the defendant had failed to establish that an obvious error had occurred or that a manifest injustice would result from failing to reverse his conviction. On the granting of certification, the defendant appealed to this court. *Held* that the defendant could not prevail on his claim that the trial court committed plain error by failing to instruct the jury that, to find the defendant guilty of conspiracy to commit robbery in the first degree, it had to find that he intended and specifically agreed that he or another participant in the robbery would be armed with a deadly weapon; although it is the better practice for the trial court to instruct the jury in direct terms that the defendant must have specifically intended each element of the offense, this court could not conclude that the trial court committed an error so clear or obvious as to necessitate reversal because, when read as a whole, the jury charge, which instructed the jury on the intent requirement for conspiracy to commit robbery in the first degree and set forth the elements of the substantive crime of first degree robbery, was sufficient to guide the jury to a correct verdict and logically required the jury to find that the defendant had agreed and specifically intended that he or another participant in the robbery would be armed with a deadly weapon.

Argued September 23—officially released December 31, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of murder, felony murder, attempt to commit robbery in the first degree, and conspiracy to commit robbery in the first degree, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Kahn, J.*; verdict and judgment of guilty of conspiracy to commit robbery in the first degree,

from which the defendant appealed to the Appellate Court, *Beach*, *Sheldon* and *Prescott*, *Js.*, which affirmed the trial court's judgment; thereafter, this court granted the defendant's petition for certification to appeal and remanded the case to the Appellate Court for consideration of the defendant's claim of plain error; subsequently, the Appellate Court, *Sheldon*, *Prescott* and *Beach*, *Js.*, affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Katherine C. Essington*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Howard S. Stein*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. The sole issue in this certified appeal is whether the defendant's conviction of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2) should be reversed under the plain error doctrine due to an alleged error in the trial court's jury instructions. The defendant, Jayevon Blaine, contends that the trial court improperly failed to instruct the jury on an essential element of the crime as required by *State* v. *Pond*, 138 Conn. App. 228, 238–39, 50 A.3d 950 (2012), aff'd, 315 Conn. 451, 108 A.3d 1083 (2015), namely, that he agreed and specifically intended that he or another participant in the robbery would be "armed with a deadly weapon . . . ." General Statutes § 53a-134 (a) (2). The Appellate Court held that there was no "obvious and undebatable error" in the trial court's jury instructions because the relevant instructions "logically required the jury to find that the defendant had agreed that a participant would be armed with a deadly weapon." *State* v. *Blaine*, 179 Conn. App. 499, 510, 180 A.3d 622 (2018). The Appellate Court also held that, even if the instructions were erroneous, there was no manifest injustice necessitating reversal of the defendant's conviction because "[e]very witness who testified that the agreement existed also testified that use of a weapon was contemplated." Id., 511. We affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On September 6, 2009, Jihad Clemons and Craig Waddell devised a plan to rob a drug dealer named Robert Taylor of his money, drugs, cell phone, and car. They discussed their plan with their friends, Hank Palmer and Michael Lomax, both of whom agreed to participate. At some point, Lomax, Clemons, and Waddell went to the home of another friend, DeAndre Harper, to inquire whether he wanted to join them in the robbery. Harper declined the invitation, but the defendant, who is Harper's cousin and who was living with Harper at the time, agreed to participate.

Clemons, Waddell, Palmer, Lomax, and the defendant decided to use a nine millimeter handgun to accomplish the robbery. Clemons called Taylor and arranged a meeting near the Blackham School in Bridgeport, purportedly to purchase marijuana. At around 9 p.m., Lomax drove Waddell, Palmer, and the defendant[1] in Lomax' white Honda to wait for Taylor near the Blackham School.

Taylor arrived at the Blackham School with the victim, Kevin Soler, and the victim's girlfriend, Priscilla LaBoy. It was very dark that night, and the three waited in the car until they saw someone dressed in dark clothing and a hoodie approaching. The victim exited the car to conduct the drug transaction on Taylor's behalf. LaBoy heard the victim say that the two men knew

each other from a party, and the individual in the hoodie then backed away and accused the victim of having a gun. The victim responded that he was unarmed and lifted up his shirt, at which point the individual in the hoodie pulled out his own gun and shot the victim multiple times at close range, killing him. The shooter instructed LaBoy to get out of the car, and she complied. Taylor also exited the car and began to run away. The shooter chased after Taylor, firing his gun two more times. LaBoy ran away from the scene of the shooting but later returned, at which point she saw a white car drive by and slow down as it passed by Taylor's car and the victim's body.

Two days later, at approximately 5:40 a.m., the police arrived at the home of Harper and the defendant to execute two arrest warrants unrelated to the events in this case. They found the defendant, Harper, and Harper's younger brother sleeping in the same bedroom. During a search of the bedroom, the police uncovered two firearms from under the mattress on which Harper and his brother had been sleeping. Later testing revealed that one of those firearms had been used in the fatal shooting of the victim.

The defendant subsequently was arrested and charged with the murder of Soler in violation of General Statutes § 53a-54a (a), felony murder in violation of General Statutes § 53a-54c, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134 (a) (2), and conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134 (a) (2). Following a jury trial, at which the defendant's coconspirators Clemons, Waddell, Lomax, and Palmer testified, the jury found the defendant not guilty of the crimes of murder, felony murder, and attempt to commit robbery in the first degree, but guilty of the crime of conspiracy to commit robbery in the first degree. The trial court rendered judgment in accordance with the jury's verdict and sentenced the defendant to a term of imprisonment of twenty years, execution suspended after fifteen years, followed by five years of probation.

The Appellate Court affirmed the defendant's judgment of conviction. *State* v. *Blaine*, 168 Conn. App. 505, 507, 147 A.3d 1044 (2016). The Appellate Court held that (1) the evidence was sufficient to support the defendant's conviction of conspiracy to commit robbery in the first degree; id., 510; (2) the trial court's denial of the defendant's request for a jury instruction on third-party culpability was harmless; id., 517; and (3) the defendant implicitly waived his claim that the trial court had failed to instruct the jury on the essential element of intent pursuant to *State* v. *Pond*, supra, 138 Conn. App. 228, and, therefore, that the defendant was not entitled to relief under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the plain error doctrine,

or the court's supervisory authority. See *State* v. *Blaine,* supra, 168 Conn. App. 518–19 and n.5. We granted the defendant's petition for certification to appeal, limited to his claim of plain error, and we remanded the case to the Appellate Court with direction to reconsider the defendant's plain error claim in light of *State* v. *McClain,* 324 Conn. 802, 815, 155 A.3d 209 (2017), in which we held that an implied waiver of a claim of instructional error does not preclude appellate relief under the plain error doctrine. See *State* v. *Blaine,* 325 Conn. 918, 918–19, 163 A.3d 618 (2017). On remand, the Appellate Court again affirmed the defendant's judgment of conviction, concluding that there was no obvious error or manifest injustice. *State* v. *Blaine,* supra, 179 Conn. App. 511. This certified appeal followed.[2]

The defendant contends that the trial court's jury instructions on conspiracy to commit robbery in the first degree were plainly erroneous because they omitted an essential element of the crime, namely, that the defendant agreed and specifically intended that he or another participant in the robbery would be armed with a deadly weapon. Because the omission of an essential element of the crime implicates the defendant's right to due process of law under the fourteenth amendment to the United States constitution, the defendant argues that the state bears the burden to establish beyond a reasonable doubt that there was no reasonable possibility that the jury was misled by the claimed instructional error. The state cannot meet this burden, the defendant contends, in light of what he characterizes as the jury's inconsistent verdict and the conflicting evidence regarding the shooter's identity. The defendant argues that the proper remedy for the alleged error is to modify the judgment pursuant to *State* v. *Greene,* 274 Conn. 134, 160–62, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006), to reflect a conviction of the lesser included offense of conspiracy to commit robbery in the third degree pursuant to General Statutes § 53a-136, which does not include the deadly weapon element.

The state responds that there was no plain error in the trial court's jury instructions because the law governing the intent necessary to commit conspiracy was unsettled at the time of the defendant's trial, pointing out that the Appellate Court's decision in *Pond* was not unanimous and review of that decision was pending in this court while the present case was being tried. See *State* v. *Pond,* supra, 138 Conn. App. 239 (*Borden, J.,* concurring) (identifying "an anomaly in [this court's] interpretation of the conspiracy section of the Penal Code that [this court] may wish to revisit"). The state also contends that, even if *Pond* is applicable, the Appellate Court correctly concluded that "the jury instructions in this case were not so clearly and obviously wrong that they rose to the level of 'plain error.' " In any event, the state argues that any error in the jury

instructions was harmless, regardless of the standard of review applied, because every coconspirator testified that the conspiracy included an express agreement to use a deadly weapon to accomplish the robbery. Lastly, with respect to the proper remedy, the state contends that, if this court determines that there is plain error necessitating reversal of the defendant's conviction, the appropriate remedy is not a modified judgment but a new trial before a properly instructed jury. See *State* v. *Pond*, supra, 315 Conn. 489.

Our review of the Appellate Court's decision whether to reverse a judgment under the plain error doctrine is subject to plenary review. See, e.g., *State* v. *Sanchez*, 308 Conn. 64, 80, 60 A.3d 271 (2013). "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) Id., 76–77. "It is axiomatic that, [t]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . Put another way, plain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, supra, 324 Conn. 813–14.

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record.

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Sanchez*, supra, 308 Conn. 77. Thus, the plain error doctrine has two prongs, under which the defendant must establish that (1) there was "an obvious and readily discernable error," and (2) that error "was so harmful or prejudicial that it resulted in

manifest injustice." *State* v. *Jamison*, 320 Conn. 589, 598–99, 134 A.3d 560 (2016); see also *State* v. *Sanchez*, supra, 78 (describing "the two-pronged nature of the plain error doctrine," which requires defendant to demonstrate "that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice" [emphasis in original; internal quotation marks omitted]).

The defendant contends that the trial court's jury instructions were erroneous pursuant to *State* v. *Pond*, supra, 138 Conn. App. 228,[3] in which the Appellate Court held that "the specific intent required by the conspiracy statute requires specific intent to bring about *all* of the elements of the conspired offense, even those that do not by themselves carry a specific intent with them." (Emphasis in original.) Id., 234. "[I]n order to prove the defendant guilty of conspiracy to commit robbery in the second degree in violation of [General Statutes] § 53a-135 (a) (2)," the Appellate Court reasoned, "the state needed to prove that he and his coconspirator specifically had an agreement to display a deadly weapon or dangerous instrument and that the defendant had the specific intent that such a weapon or instrument would be displayed." Id. The jury instruction at issue in *Pond* informed the jury that the defendant must have had the specific intent "to commit a *larceny* when he entered into the agreement"; (emphasis added; internal quotation marks omitted) id., 237; and was constitutionally defective because it "did not tell the jury that the state was required to prove that the defendant specifically intended that, in the course of the robbery, what was represented to be a deadly weapon or dangerous instrument would be used or displayed." Id., 238–39. Therefore, the Appellate Court reversed the defendant's judgment of conviction and remanded the case for a new trial. Id., 239.

On appeal to this court, we agreed that, "to be convicted of conspiracy, a defendant must specifically intend that every element of the planned offense be accomplished, even an element that itself carries no specific intent requirement." *State* v. *Pond*, supra, 315 Conn. 453. Because the state did not challenge the Appellate Court's determination that the trial court's jury instructions failed to inform adequately the jury that "the state must prove that the defendant specifically agreed that there would be the display or threatened use of what was represented as a deadly weapon or dangerous object during the robbery or immediate flight therefrom," we affirmed the judgment of the Appellate Court reversing the defendant's conviction and remanded the case for "a new trial before a properly instructed jury." Id., 489.

As applied to the present case, *Pond* holds that, to convict the defendant of conspiracy to commit robbery in the first degree in violation of §§ 53a-48 and 53a-134

(a) (2), the state bore the burden to prove, beyond a reasonable doubt, that the defendant agreed and specifically intended that he or another participant in the robbery would be "armed with a deadly weapon" during the commission of the robbery or immediate flight therefrom. General Statutes § 53a-134 (a) (2). To determine whether the trial court committed plain error in instructing the jury on the specific intent element of this offense, we must examine the trial court's jury instructions, mindful that, "[i]n determining whether a jury instruction is improper, the charge . . . is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect [on] the jury in guiding [it] to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Carrion*, 313 Conn. 823, 845, 100 A.3d 361 (2014). "It is well established that a defendant is entitled to have the jury correctly and adequately instructed on the pertinent principles of substantive law. . . . Moreover, [i]f justice is to be done . . . it is of paramount importance that the court's instructions be clear, accurate, complete and comprehensible, particularly with respect to the essential elements of the alleged crime. . . . Nevertheless, [t]he charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . In reviewing the charge as a whole, [the] instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance. . . . The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 768–69, 974 A.2d 679 (2009).

We must consider the trial court's jury instructions as a whole, and, therefore, we begin our review with the trial court's explanation of the essential elements of the crime underlying the conspiracy—robbery in the first degree. The trial court, quoting § 53a-134 (a) (2), informed the jury that "[a] person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery or of immediate flight therefrom, he or another participant in the crime is armed with a deadly weapon." The trial court then instructed the jury that robbery in the first degree has three essential elements: "The first element is that the defendant committed a robbery. Simple robbery is defined in [General Statutes §] 53a-133 as a larceny committed with the use of or threatened use of physical force. The gist of robbery, then, is the commission of a larceny by the use of physical force or the threat of immediate use of physical force. . . .

"Element two, use of physical force. The [second] element is that the larceny was accomplished by the use . . . or threatened use of physical force. Physical

force means the external physical power over the person, which can be effected by hand or foot or another part of the defendant's body applied to the other person's body or applied by. . . an implement, projectile or weapon. . . .

"Element three, additional factor. The third element of robbery in the first degree is that, [in] the course of the commission of the robbery or immediate flight from the crime, the defendant or another participant in the crime was armed with a deadly weapon. . . .

"Immediate flight means that it occurred so close in point of . . . time to the commission of the robbery [so] as to become part of the robbery. The law does not require that the weapon be used or employed for any particular purpose or object. If any person . . . who participated in the crime was armed with a deadly weapon or threatened the use of what he represented by words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm while in the immediate flight from the crime, then all participants in the robbery could be just as guilty of first degree robbery as if they had themselves actually done so."

In its instructions regarding the crime of conspiracy to commit robbery in the first degree, the trial court, quoting § 53a-48 (a), advised the jury that "[a] person is guilty of conspiracy when, with the intent that conduct constituting [a] crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"To constitute the crime of conspiracy, the state must prove the following elements beyond a reasonable doubt: (1) there was an agreement between the defendant and one or more persons to engage in conduct constituting the crime of robbery in the first degree; (2) there was an overt act in furtherance of the subject of the agreement by any one of those persons; and (3) the defendant specifically intended to commit the crime of robbery in the first degree."

The trial court expounded on the first element of conspiracy, the existence of an agreement between the defendant and one or more other persons, by explaining that "[i]t is not necessary for the state to prove that there was a formal or express agreement between them. It is sufficient to show that the parties knowingly engaged in a mutual plan to do a criminal act. . . . Therefore, in order to convict the defendant on the charge contained in the information, the first element that the state must prove beyond a reasonable doubt is that the defendant entered into an agreement with at least one other person to engage in conduct constituting robbery in the first degree."

With respect to the third element of conspiracy, criminal intent, the court explained: "The third element is

that the defendant had the intent to commit robbery in the first degree. The defendant must have had specific intent. The defendant may not be found guilty unless the state has proved beyond a reasonable doubt that he specifically intended to commit robbery in the first degree when he entered into the agreement.

"Specific intent is the intent to achieve a specific result. A person acts intentionally with respect to a result when his conscious objective is to cause such result. What the defendant intended is a question of fact for you to determine. What a person's intention was is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain knowledge or a certain purpose or intention to do harm to another. Because direct evidence of . . . the defendant's state of mind is rarely available, intent is generally proved by circumstantial evidence. The only way a jury can ordinarily determine what a person's intention was at any given time is by determining what the person's conduct was and what the circumstances were surrounding that conduct and, from that, infer what his intention was. To draw such an inference is the proper function of a jury, provided, of course, that the inference drawn complies with the standards for inferences as explained in connection with my instruction on circumstantial evidence. . . .

"Conclusion. In summary, the state must prove beyond a reasonable doubt that (1) the defendant had an agreement with one or more persons to commit robbery in the first degree, (2) at least one of the coconspirators did an overt act in furtherance of the conspiracy, and (3) the defendant specifically intended to commit robbery in the first degree."

The foregoing instructions adequately informed the jury that, to find the defendant guilty of the crime of conspiracy to commit robbery in the first degree, it must find that the defendant agreed "to engage *in conduct constituting the crime of robbery in the first degree*" and "*specifically intended to commit* [*the crime of*] *robbery in the first degree*," an essential element of which is that the defendant or a participant to the crime be armed with a deadly weapon. (Emphasis added.) The trial court explained that "[s]pecific intent is the intent to achieve a specific result," and "[t]he defendant may not be found guilty unless the state has proved beyond a reasonable doubt that he specifically intended to commit robbery in the first degree when he entered into the agreement." As the Appellate Court aptly observed, the trial court "did not expressly limit the requirement of specific intent to fewer than all the elements of the substantive crime," and, therefore, "the instruction logically required the jury to find that the defendant had agreed that a participant would be armed with a deadly weapon." *State* v. *Blaine*, supra, 179 Conn.

App. 510. This is in stark contrast to the jury instruction found to be constitutionally defective in *Pond*, which permitted the jury to find the defendant guilty of conspiracy to commit robbery in the second degree if the defendant "specifically intended to commit a larceny"; *State* v. *Pond*, supra, 138 Conn. App. 237; and, thus, omitted the essential element of specific intent "that, in the course of the robbery, what was represented to be a deadly weapon or dangerous instrument would be used or displayed." Id., 238–39.

The defendant contends that the jury instructions were flawed because they "did not apply the specific intent requirement for conspiracy to the weapon element of first degree robbery anywhere in [the] charge or instruct the jury that [the defendant] had to agree that one of the participants would be armed with a deadly weapon to be convicted of conspiracy to commit first degree robbery . . . ." Although the better practice is to instruct the jury in direct terms that the defendant must specifically have intended that he or another participant in the robbery be "armed with a deadly weapon" during the commission of the robbery or immediate flight therefrom,[4] it is clear to us that the jury instructions in the present case provided the jury with adequate guidance.

Because we conclude that the trial court's jury instructions, when viewed as a whole, were sufficient to guide the jury in arriving at its verdict, we can perceive no "clear, obvious and indisputable [error] as to warrant the extraordinary remedy of reversal."[5] (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 373, 33 A.3d 239 (2012); see *State* v. *Moon*, 192 Conn. App. 68, 100, 217 A.3d 668 (2019) (distinguishing *Pond* and finding no plain error in trial court's jury instruction on conspiracy to commit robbery in first degree because "the court made clear that the defendant had to intend for a participant in the crime to use a deadly weapon when it stated that the intent required for conspiracy to commit robbery in the first degree is the intent to agree to commit the underlying crime of robbery in the first degree"); *State* v. *Louis*, 163 Conn. App. 55, 73, 134 A.3d 648 (holding that "the court properly instructed the jury with respect to the conspiracy charges lodged against the defendant in conformity with *State* v. *Pond*, supra, 315 Conn. 454" because "[t]he court instructed the jury with respect to robbery in the first degree that the state had to prove that the 'coconspirators understood a deadly weapon would be carried by one of the participants' "), cert. denied, 320 Conn. 929, 133 A.3d 461 (2016).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] At trial, Clemons, Waddell, Lomax, and Palmer all testified that Clemons was not present at the robbery because he had been dropped off near his home sometime prior to his 9 p.m. curfew.

[2] We granted the defendant's petition for certification to appeal from the

judgment of the Appellate Court, limited to the issue of whether "the Appellate Court properly conclude[d] that the trial court's failure to instruct the jury in accordance with *State* v. *Pond*, [supra, 315 Conn. 451], did not constitute plain error." *State* v. *Blaine*, 328 Conn. 917, 181 A.3d 566 (2018).

[3] The defendant focuses primarily on the Appellate Court's decision in *Pond* because, at the time of the defendant's trial, our decision affirming the Appellate Court's judgment had not yet been issued.

[4] See Connecticut Criminal Jury Instructions 3.3-1, available at http://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited December 23, 2019).

[5] Having determined that the defendant's claim fails under the first prong of the plain error doctrine, we need not reach the second prong, which examines whether the "omission was so harmful or prejudicial that it resulted in manifest injustice." *State* v. *Jamison*, supra, 320 Conn. 599.

_____